UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVELIO DE ARMAS PICHARDO,

      Petitioner,

v.                                    Case No.  2:26-cv-1474-JES-DNF

WARDEN, FLORIDA SOFT SIDE
SOUTH, et al.,

      Respondents.

_____/

## OPINION AND ORDER

Petitioner Evelio De Armas Pichardo, an immigration detainee, initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1).  Respondents have filed a response and a supplemental response to the petition.  (Doc. 8; Doc. 11).  Upon review of the parties' filings, the Court finds that a reply is unnecessary and that the petition must be granted.

### I.   Background

Pichardo, a citizen of Cuba, entered the United States on May 10, 1980.  (Doc. 8 at 1).  He was ordered removed on September 19, 1996, but has been released and re-detained on orders of supervision on multiple occasions.  (Id. at 2).  Pichardo was placed in immigration custody on December 10, 2025 after an arrest for battery.  (Id.)  On January 13, 2026, he was served with notice that Immigration and Customs Enforcement (ICE) intends to remove

him to Mexico.  (Id.)  Pichardo refused to sign the warning and accompanying instruction sheet.  (Id.)

On March 16, 2026, ICE transported Pichardo to the Hidalgo Texas Port of Entry, but he refused to exit the transport bus. (Doc. 8 at 2).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Pichardo argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.  In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. at 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  Id. at 699.  The Court found it unlikely

2

Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701.  So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days.  Id.  If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise.  Id.[1]

Here, there is no dispute that Pichardo has now been in ICE custody for more than six months following his latest order of removal.  On May 19, 2026, Respondents argued that Pichardo was not entitled to release because he had been detained only 144 days when he filed his petition.  (Doc. 8).  Thus, on June 9, 2026, the Court directed Respondents to update the Court with progress by "describe[ing] in detail all efforts made to secure [Pichardo's] removal."  (Doc. 10).  Respondents repeated the same arguments from their original response.  (Doc. 11).  Generally, Respondents contend that Pichardo is not entitled to release because 96 days

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months.  See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

after his detention, ICE attempted a third-country removal to Mexico, but he thwarted ICE's efforts at removal by failing to voluntarily depart.  (Doc. 11-1 at 2).

Title 8 U.S.C. § 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).  The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)).  More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh, 945 F.3d at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Pichardo's actions implicated § 1231(a)(1)(C).  They offer the declaration of

4

Deportation Officer Ricardo Herrero who states that on March 16, 2026, Pichardo was transported to the Hidalgo, Texas Port of Entry and ordered to exit the bus, which he did not do. (Doc. 11-1 at 2). It appears from Officer Herrero's declaration that ICE merely transported Pichardo to the Mexican border and asked him to voluntarily depart. Respondents do not allege that Mexico actually agreed to accept Pichardo or that ICE even had an approved plan for removal to Mexico that he thwarted in some way. Further, assuming that Mexico was willing to accept Pichardo, Officer Herrero does not explain why ICE could not or did not thereafter seek travel documents or otherwise plan for his removal to Mexico in a different way. In fact, Respondents provide no evidence suggesting that ICE actually communicated with Mexico specifically regarding Pichardo. Nor do Respondents claim that necessary travel documents have been sought—let alone obtained—for any country. Without more, the Court cannot find that Pichardo's actions in Texas prevented his removal and reset Zadvydas' 180-day clock. The Court's confidence in Pichardo's foreseeable removal to Mexico is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there, which Respondents admit they do not have. See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on

5

Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").

In short, Respondents present no evidence showing any significant steps taken to remove Pichardo to Cuba, Mexico, or another country. Instead, the only effort at removal was a trip to the United States-Mexico border in an apparent attempt to coerce Pichardo into voluntarily departing to a country of which he is not a citizen. But detaining a noncitizen and using the specter of continued detention to compel him to "voluntarily" depart by walking across the international border does not constitute removal; rather, it is an action designed to lead to the type of indefinite detention that Zadvydas sought to prevent. The Court also notes that ICE waited more than 90 days to transport Ponce Bermudez to the Mexican border and that an additional 100 days have since passed. Basically, ICE has not presented evidence showing that it even attempted to remove Pichardo within the 90 days contemplated by 8 U.S.C. § 1231(a)(1)(A) or in the months that have passed since.

Based on the evidence, or lack thereof, the Court finds that Respondents do not show a significant likelihood that Pichardo will be removed in the reasonably foreseeable future. Respondents have had almost 30 years—and more than six months since his present

detention—to remove Pichardo and are still unable to articulate a specific plan for his removal to any country.  And while there may be some possibility that Mexico will eventually accept Pichardo, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." Arenado-Borges, 2025 WL 3687518, at *4 (emphasis added) (quotations omitted).

Therefore, Pichardo is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision.  If he fails to comply with the conditions of release, Pichardo may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Pichardo to "assur[e] [his] presence at the moment of removal."  Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.    Evelio De Armas Pichardo's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.    Respondents shall release Pichardo within 24 hours of this Order, and they shall facilitate his transportation from the

7

detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.   The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 25, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

8